[No. 1868.   Decided September 19, 1895.]

THE STATE OF WASHINGTON, *on the Relation of P. H. Dodge,* v. W. W. LANGHORNE, *Judge.*

PROHIBITION, WRIT OF — UNWARRANTED ASSUMPTION OF JURISDICTION BY COURT.

A person not a party to insolvency proceedings has no right to appear in the action by petition and ask to have a judgment which had been rendered therein set aside, and the filing of a petition under such circumstances will not give the court jurisdiction either of the subject matter or of the person of the defendant.

In such case; the proceedings of the court being without jurisdiction, prohibition will lie to prevent the court enforcing its orders therein..

*Original Application for Prohibition.*

*Edward F. Hunter,* for relator.

*Reynolds & Stewart,* for respondent.

The opinion of the court was delivered by

ANDERS, J.—In March, 1891, P. H. Dodge, the relator herein, recovered judgment in the superior court of Lewis county, against Box & Rhodes, known as the Chehalis Shingle Company, for the sum of $1,338.85 and costs.   On July 27, 1891, the shingle company satisfied that judgment by assigning to the relator a one-third interest in an unliquidated claim for damages which they had against the firm of Webster, Kelso & Dare.   Subsequently, and according to agreement between the relator and the Chehalis Shingle Company, the latter commenced an action in the superior court against Webster, Kelso & Dare, to recover the amount of their claim.   This action resulted in a judgment for the plaintiffs for the sum of $1,378 and costs taxed at $229.90, which judgment was ren-

dered July 29, 1892. On March 7, 1893, the judg-
ment and interest were paid in full by the defendants,
and then amounted to $1,829.76. During the pen-
dency of this action the Chehalis Shingle Company
made an assignment for the benefit of their creditors,
under the state insolvency law, and one Newland was
appointed assignee. There being a disagreement
between the relator, the assignee and some other
parties as to the relator's interest in this fund,
the whole thereof was, by order of the court, de-
livered to the clerk to be held for future distribu-
tion. On March 13, 1893, the relator herein com-
menced an action which he termed an interven-
tion, but which was more in the nature of an inter-
pleader, to recover the one-third interest in the amount
of this judgment, which he claimed under the assign-
ment from the Chehalis Shingle Company, and on
June 30, 1893, he recovered a judgment for the sum
of $632.54, which sum was accordingly paid him by
the clerk of the court. By agreement between the re-
lator and the Chehalis Shingle Company, the relator
was to pay one-third of all the costs and expenses of
the suit against Webster, Kelso & Dare, and the judg-
ment which he recovered in the proceeding in inter-
vention included certain witness fees which he alleged
that he had theretofore paid. The judgment and
decision of the court in favor of the relator was not
appealed from by any of the parties interested in the
proceeding, but on January 26, 1894, one James Mc-
Andrews presented to the judge of said court a petition
reciting that he was a witness for the plaintiff in the
action brought by the Chehalis Shingle Company
against Webster, Kelso & Dare, and that his fees
charged up in the cost bill in that action, and to which
he was entitled, amounted to the sum of $58.60, which

sum has not been paid to him, or any part thereof except the sum of $23.75, which was paid to him by said Chehalis Shingle Company October 26, 1891; that said Dodge wrongfully claimed and received from the clerk of this court the sum of $58.20, witness fees belonging to petitioner, and that he had not since paid to the petitioner the said sum of $58.20, or any part thereof; that of the amount so wrongfully withdrawn from the registry of the court by the said Dodge, the sum of $34.45 belonged to and should be paid to petitioner; and the petition prayed for an order directing said Dodge to return into court said sum of $58.20, withdrawn by him, and that the court order and direct that the amount due to this petitioner for his witness fees, when paid into court, be paid to the petitioner. This petition was verified by the said James McAndrews. The judge of said court thereupon made an order directing the relator to appear before the court on February 5, 1895, to show cause why the prayer of said petition should not be granted, and further ordered and directed that a copy of the order should be delivered to the relator, or to his attorney, Edward F. Hunter. In accordance with the order of the court, a copy of the petition and order was served upon the attorney for the relator on January 26, 1894, as shown by his admission endorsed on the original petition and order. On February 5, 1894, the relator, by his attorney, filed a motion to quash the court's citation, on the grounds, (1) that same was not issued in the name of the State of Washington; (2) that it is not signed by the clerk of said court, and (3) that it has not the seal of the court. The relator appeared specially for the purpose of this motion. The court overruled the motion to quash, and the relator duly excepted.

Nothing further was done in the matter until April

24, 1895, when a notice of motion for an order requir-
ing the relator to pay the money into court was served
upon him, requiring him to appear before the court
on May 8, 1895. The relator failed to appear in re-
sponse to that notice, and the court made an order
requiring him to pay the money to the clerk of the
court, and directed that he be cited to appear in court
on the 3d day of June, 1895, to show cause, if any he
had, why he had not complied with the order of the
court. In response to this order the relator and his
attorney appeared in court and filed an answer setting
up the previous orders and proceedings of the court,
including the judgment in his favor in the proceeding
in intervention, and claiming that that judgment was
final and conclusive, and that the court did not have
jurisdiction at the time of issuing the citation, or at
any time since, over the subject matter or the person
of the relator. The petitioner, by his attorneys, moved
to strike this answer from the files for the reason that
it was not responsive to the allegations of the petition,
which motion was granted by the court, and there-
upon the court entered a peremptory order that the
relator pay the said sum of $58.20 to the clerk of the
court. A stay of proceedings was then had by agree-
ment of the parties, for the period of fifteen days.
The relator having failed to comply with this last
order of the court within the time limited, an affidavit
was presented to the court by one David Stewart, at-
torney for the petitioner, stating the fact of non-com-
pliance and requesting the court to make an order
compelling the relator to comply with the orders of
the court and to punish him as for a contempt of
court. Upon the presentation of this affidavit and a
motion founded thereon, the court directed that a
warrant of arrest issue for the purpose of bringing

the relator before the court to show cause why he should not be adjudged guilty of contempt, which was accordingly done.   At this stage of the proceedings the relator applied to this court for a writ of prohibition to restrain the court from further proceeding in the matter of enforcing the order.

It is contended here by the relator, as it was contended at all stages of the proceedings in the court below, that the court had no jurisdiction to make the order which it was attempting to enforce.   On the other hand, it is insisted on behalf of respondent that the court had jurisdiction to hear and determine the questions presented by the petition of McAndrews, for the reason that the relator had *intervened* in the insolvency proceeding of the Chehalis Shingle Company, and was therefore bound by every order made therein of which he had notice.   But it is difficult to perceive how the fact that he intervened in that proceeding can confer jurisdiction upon the court in this matter.   We think the question of jurisdiction must be determined without reference to that action.   It must be recollected that the petitioner, McAndrews, bases his right to relief upon the fact that he was a witness in the case of the shingle company against Webster, Kelso & Dare, and was, therefore, entitled to a portion of the costs taxed in favor of the plaintiffs in that case, as witness fees.   He was not a party either to that action or to the insolvency proceedings, and if the object of his petition was to set aside or modify the judgment of the court in favor of the relator, then it is evident that he did not proceed in accordance with the provisions of the statute.   Furthermore, not having been a party to the proceeding in which he has assumed to entitle his petition, he had no right to move to set aside the judgment, in any event.   It is only a party to an action

who is entitled to move to set aside the judgment. See Title 14, Code of Procedure. If the petitioner had any claim for fees or anything else against the relator, it was his duty to institute some proceeding in accordance with law directly against the relator for the recovery of the amount of his claim. This he did not do in this instance. His petition cannot be considered a complaint because it is not such either in form or substance, and apparently was not intended to be such. Conceding all of the facts stated in it to be true, it is manifest that he has no cause of action of any character whatever against the relator. He has, by his own showing, no interest in the costs taxed in the judgment against Webster, Kelso & Dare, as a witness or otherwise.

Now, it has been said by the highest authority that jurisdiction is the power to hear and determine a cause (*United States v. Arredondo,* 6 Pet. 691), but the power to hear and determine must be exercised in accordance with the modes prescribed by law. And though the jurisdiction of a court may be undoubted, its decision may nevertheless be invalid for the reason that it is not such as is authorized by law. As to jurisdiction, it is said by a text writer of repute that:

"There must be a right in dispute between two or more parties; a proceeding commenced under the proper rules of the law; process formal in its character served on the opposite party, or parties, to the proceeding; the subject matter must be one that the court is empowered to hear and determine; the parties must have the right to be heard and be within the jurisdiction of the court; or the property, if that be the subject of the action, must be within such jurisdiction; and the owner or person having the right to claim it, or to be heard, must be notified as required by law of the pendency of the proceeding." Brown, Jurisdiction, § 1.

38—12 WASH.

The same writer (§ 3), in speaking of the mode of exercising judicial power, further says:

" Ordinarily there must be a petition or declaration filed in the tribunal having the capacity or jurisdiction to hear, try and determine the particular question involved, and this must set forth a state of facts showing that a controversy exists between the plaintiff and defendant; that the defendant or his property is within the jurisdiction of the court, or may be brought by process within it; that the plaintiff has the right or capacity to sue, setting forth such a right to the subject of the action as gives a sufficient interest in the plaintiff or complainant to bring the suit."

And in *Windsor v. McVeigh*, 93 U. S. 274, the court says:

"A departure from established modes of procedure will often render the judgment void; thus, the sentence of a person charged with felony, upon conviction by the court, without the intervention of a jury, would be invalid for any purpose.    The decree of a court of equity upon oral allegations, without written pleadings, would be an idle act, of no force beyond that of an advisory proceeding of the chancellor.    And the reason is, that the courts are not authorized to exert their power in that way."

Even if it be conceded that, in this instance, the court had jurisdiction of the subject matter and of the relator, it does not follow, according to the principles laid down in the above authorities, that it had the right or power to make the order which it is attempting to enforce.    In fact, it appears that the court clearly transcended its power in making the order.    It assumed to act without the filing of a complaint and to determine without investigation or proof.    This was an attempt to give effect to the will of the court, rather than that of the law.    When the court struck out the answer of the relator, which was certainly relevant and

material, as it was in effect a plea to the jurisdiction of the court, it committed error, and when it entered an order without a hearing its act was contrary to a fundamental principle of law.   We have seen that in order to try and determine a controversy the defendant must be brought before the court by some process known to the statute.   In this case that was not done. The order of the court was substituted for the summons provided for by law, and even the substituted process or " citation" should have been quashed on motion of the relator for the causes stated therein.

It is evident that the petitioner could have no right to any part of the judgment in a cause by reason of his having been a witness therein.   It is also evident from the record and the law governing the procedure of courts, that the learned court exceeded its power and jurisdiction in making the order in question. And, the order being illegal and invalid, it follows that the relator cannot be punished for a contempt in violating it.   See *People v. O'Neil*, 47 Cal. 109; *Ex parte Hollis*, 59 Cal. 405; *Brown v. Moore*, 61 Cal. 432; *Leopold v. People*, 140 Ill. 552 (30 N. E. 348).

Let the writ of prohibition issue.

HOYT, C. J., and SCOTT, DUNBAR and GORDON, JJ., concur.